| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Michael Burnett

                Plaintiff,

vs.

City of Minneapolis; Christopher Cushenbery, Badge No. 1375, personally, and in his capacity as a Minneapolis Police Officer; Laurarose Turner, Badge No. 007340, personally, and in her capacity as a Minneapolis Police Officer; Steven D. Lecy, Badge No. 004057, personally, and his capacity as a Minneapolis Police Officer; John Doe and Jane Doe each personally and his or her capacity as a Minneapolis Police Officer,

                Defendants.

Case File No.:

**COMPLAINT**

(JURY TRIAL DEMAND)

For his Complaint, Plaintiff Michael Burnett state and allege as follows:

1. This is an action for money damages for injuries sustained by Plaintiff as a result of the use of excessive force, unreasonable seizure, and violation of his constitutional rights by Defendants.

2. Plaintiff bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(3). The cited statutory and constitutional provisions confer the Court with jurisdiction over this matter.

3. Plaintiff Michael Burnett ("Burnett") was, at all times relevant to the facts herein, a citizen of the United States, and a resident of the State of Minnesota, Hennepin County. Burnett is an African American.

4. Defendant Christopher Cushenbery ("Cushenbery") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department, Badge No. 1375, and was driving Squad 361A. Upon information and belief Cushenbery was and is a citizen of the United States and a resident of the State of Minnesota, and is Caucasian.

5. Defendant Steven D. Lecy ("Lecy") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department, Badge No. 007340, and assigned to Squad No. 331. Upon information and belief Lecy is a citizen of the United States, resident of the State of Minnesota, and is Caucasian.

6. Defendant Laurarose Turner ("Turner") (F/K/A Laurarose Steberg) was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department. Upon information and belief Steberg was and is a citizen of the United States and a resident of the State of Minnesota.

7. Defendant John Doe was, upon information and belief, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department. Upon information and belief John Doe was and is a citizen of the United States and a resident of the State of Minnesota.

8. Defendant Jane Doe was, upon information and belief, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department. Upon information and belief Jane Doe was and is a citizen of the United States and a resident of the State of Minnesota.

9. On December 31, 2009, and January 1, 2010, Plaintiff Burnett was residing at a single family residence located at 4228 Elliott Avenue South, in the City of Minneapolis, Hennepin County, Minnesota. (the "Home").

10. On that date, Burnett was holding a gathering of friends and family at the Home as a memorial service for his deceased brother. Throughout the evening of December 31, 2009, friends and family were coming and going from the memorial service at the Home to pay their respects to Burnett's brother and celebrate his life.

11. At approximately 4:00 a.m. on January 1, 2010, Burnett and his mother, Simone Sutton, were in the basement of the Home with a small group of friends, when Minneapolis Police Officers knocked on the front door of the Home. Burnett and his mother were able to see that the police were at the front door by viewing a security camera video feed that was displayed on a monitor in the basement area.

12. Upon information and belief, the Minneapolis Police Officers had been dispatched to the area as a result of a "shots fired" call nearby.

13. Burnett and his mother went upstairs to meet the officers at the front door. The officers were standing inside a small porch area attached to the Home that led to the front door.

14. Burnett opened the front door slightly and said, "May I help you?" Burnett's mother was standing directly behind Burnett and witnessed Burnett open the door to greet the police officers, and the immediate aftermath.

15. Defendant Officer Lecy was the Officer who had knocked on and was standing at the front door when Burnett opened the door.

16. Upon Burnett opening the door, without any provocation from Burnett, Lecy immediately grabbed Burnett and pulled him out through the front door opening and into the entryway of the small porch.

17. Lecy began punching Burnett in the face with a closed fist as Burnett was being pulled out into the porch area.

18. Immediately after Burnett was pulled onto the porch area, Defendant Officer Cushenbery joined with Lecy and also began repeatedly punching Burnett.

19. Officer Lecy, without provocation, deployed his taser and began shooting Burnett with the taser darts, causing him to be electrically shocked. Burnett fell to the floor, and after laying face down on the floor of the porch, Lecy continued to taser Burnett. Lecy also inadvertently shot taser darts into Cushenberry's knee. Lecy then "drive stunned" Burnett two times using the taser. Burnett was tasered by the officer four to six times in total causing burns on his back.

20. At the time Burnett was being assaulted in the porch area, a female officer, upon information and belief, Defendant Laurarose Turner, put her elbow in front of Ms. Sutton, containing her in the Home. Turner was above to observe the assault on Burnett and took no action to stop the assault, preventing Plaintiff's mother from entering the porch entryway.

21. Defendant Lecy and Cushenberry continued to punch Burnett with closed fists while he was prone on the ground, and Cushenbery began kicking Burnett with his knee and feet.

22. During the initial attack in the porch area on Burnett, Defendant Cushenbery punched Burnett in the face and back of head at least five times, and kicked him at least four times.

23. During this time, Burnett's mother backed away from the entryway back into the Home. She was distressed by seeing her son being beaten by the numerous police officers.

24. During the incident, Ms. Sutton's boyfriend, John Wiley, witnessed one male officer, upon information and belief Cushenbery or Lecy, take a flashlight from his holster and smash the butt of the flashlight into the eye of Burnett. Wiley then witnessed that Burnett's face and eye area was covered with blood immediately after the Officer struck Burnett with the flashlight.

25. Other Uniformed Officers John Doe and Jane Doe arrived and observed Officers Lecy and Cushenbery attacking Burnett, yet took no action to intervene or restrain the assaulting officers. They just stood there and watched the assaults.

26. Defendant Cushenbery handcuffed Burnett on the porch of the Home. He then pushed Burnett down the front staircase consisting of about ten steps, which led from the front door to the sidewalk. Burnett landed on the area of ground between the sidewalk and curb.

27. As Burnett lay on the ground, Cushenbery placed his foot on Burnett's head and pushed down, forcing Burnett's face into the snow and dirt, restricting Burnett's breathing.

28. Cushenbery released his foot, and when Burnett lifted his head to get air, Cushenbery kicked Burnett in the right side of Burnett's face. Blood from Burnett was splattered across the snow of the front yard.

29. The Officer's had no probable cause to believe that Burnett had engaged in any criminal conduct prior to their assault on him.

30. Officer Lecy later reported that upon arrival at the address he had spoken to several people leaving the address prior to Lecy going to the front door. Lecy reported that he was told by these people that there had been no shots fired at the Home.

31. Burnett was taken to the Hennepin County Medical Center to be treated for his injuries. He had injuries to his eye, chin, and jaw. Burnett was then transported to Hennepin County Jail and booked. He was incarcerated and charged with Disorderly Conduct and Misdemeanor obstructing legal process.

32. Burnett remained incarcerated at Hennepin County jail for three days, until January 3, 2010.

33. The assaulting officers had no justifiable basis for their conduct towards Burnett on the morning of January 1, 2010, and their conduct shocks the conscience.

34. The actions by Defendant Minneapolis police officers evidence their improper motives and deliberate indifference to Burnett's civil rights.

35. As a direct and proximate result of the actions of Defendant Officers, Burnett suffered, among other injuries, an orbital fracture of the skull leading to permanent partial loss of vision in one eye.

## CAUSES OF ACTION

### COUNT ONE

### 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS (EXCESSIVE USE OF FORCE AND UNREASONABLE SEIZURE) (DEFENDANTS CUSHENBERY AND LECY)

36. Plaintiff restates each factual allegation asserted in the preceding Paragraphs.

37. By the actions described above, Defendant Officers and each of them, under color of state law, violated and deprived Plaintiff of his clearly established and well-settled civil rights to be free from use of excessive force and unreasonable seizure.

38. Defendant Officers subjected Plaintiff to these deprivations of his rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by their actions.

39. As a direct and proximate result of the acts and omissions of Defendant officers, Plaintiff suffered physical injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

40. Punitive damages are available against Defendant officers and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

41. Plaintiff is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT TWO

### 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS
### (CONSPIRACY IN EXCESSIVE USE OF FORCE AND UNREASONABLE SEIZURE)
### (DEFENDANTS CUSHENBERY, LECY, TURNER, JOHN DOE AND JANE DOE)

42. Plaintiff restates each factual allegation asserted in the preceding Paragraphs.

43. By the actions described above, Defendants Officers, and each of them, under color of state law, conspired to, and did, violate and deprive Plaintiff of his clearly established and well-settled civil rights to be free from excessive use force and unreasonable seizure.

44. By these actions described above, Defendant Officers Turner, John Doe and Jane Doe failed to protect Plaintiff from the excessive use of force by Cushenbery and Lecy while under a duty to do so.

45. Defendant Officers conspired to, and did, subject the Plaintiff to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Plaintiff's rights would be violated by the Defendants' actions.

46. As a direct and proximate result of the conspiracy, and acts and omissions of Defendant Officers, Plaintiff suffered physical injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

47. Punitive damages are available against Defendant Officers and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

48. Plaintiff are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT THREE

## 42 U.S.C. § 1985

49. Plaintiff restates each factual allegation asserted in the preceding Paragraphs.

50. Upon information and belief, the actions of Officer Cushenbery and Lecy and others, were conducted as a part of a tacit agreement or conspiracy to refuse to vindicate, refuse to protect, or to otherwise infringe upon the constitutional rights of African-American person in the City of Minneapolis, including but not limited to Plaintiff. Such a tacit agreement or conspiracy violates 42 U.S.C. § 1985 by depriving a class of persons, including Plaintiff, of rights because of race-based animus or hostility and deprives them of their constitutional rights through a pattern and practice of condoned illegal police behavior.

51. Defendant Officers conspired to, and did, subject the Plaintiff to these deprivations of his rights either maliciously or by acting with reckless disregard for whether Plaintiff's rights would be violated by the Defendants' actions.

52. As a direct and proximate result of the conspiracy, and acts and omissions of Defendant Officers, Plaintiff suffered physical injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

53. Punitive damages are available against Defendant Officers and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

54. Plaintiff are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988

## COUNT FOUR

### CIVIL RIGHTS VIOLATION BY CITY OF MINNEAPOLIS- MONELL CLAIM

1. Plaintiff restates each factual allegation asserted in the preceding Paragraphs.

2. Defendant City of Minneapolis intentionally, knowingly, recklessly, or with deliberate indifference to the rights of citizens, failed to supervise, instruct and train Defendant Officers and other Minneapolis police officers, to refrain from unlawfully using unreasonable force, falsely charging citizens without probable cause, and unreasonably seizing citizens.

3. Upon information and belief, before January 1, 2010, Defendant City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police

personnel, including Defendants of unjustified, unreasonable and illegal use of force, filing false police reports, falsely charging citizens without probable cause, unreasonable seizures and other forms of intimidation, coercion and harassment.

4. As of January 1, 2010, Defendant City of Minneapolis maintained a custom and practice of deliberate indifference to citizen complaints alleging misconduct and failed to train, discipline, remediate, counsel or retrain officers with histories of improper, abusive and intentional misconduct.

5. Defendant City of Minneapolis, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless or wanton conduct of Defendant Officers.

6. As a direct and proximate result of the acts and omissions, systemic flaws, policies and customs of Defendant City of Minneapolis, Defendant officers engaged in the above-described conduct in violation of Plaintiff's Constitutional rights, whereby Plaintiff suffered injuries, was forced to endure great pain and mental suffering and was damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

7. Plaintiff is entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1. Compensatory and special damages against the Defendants, jointly and severally, in an amount in excess of Five Hundred Thousand ($500,000) Dollars, in addition to Plaintiff's reasonable attorney's fees, and costs and disbursements;

2. Punitive damages against Defendants, jointly and severally, in an amount to be determined at trial by jury;

3. All other legal and equitable relief authorized and appropriate under the circumstances.

\*\*\*

Dated this 6th day of June, 2013.

By: *[signature]*
James W. Delaplain, #0267272
The Clifton Mansion
309 Clifton Avenue
Minneapolis, MN 55403
(612) 874-0911; Fax: (612) 767-6347
jim@delaplainlaw.com

In association with:

Daniel J. Brazil, #29956X
The Clifton Mansion
309 Clifton Avenue
Minneapolis, MN 55403
(612) 874-6109; Fax: (612) 767-6347
djbrazil@djbrazil-law.com

Jeff Gray, #0164161
2321 Scout Circle
Burnsville, MN 55337
(952) 895-8237

*Attorneys for Plaintiff*